BAYVIEW TOWING, INC. et al.

v.

**Bruce A. STEVENSON et al.**

**No. 94–596–M.P.**

Supreme Court of Rhode Island.

May 21, 1996.

William A. Dimitri, Jr., Providence, for Plaintiff.

Paul J. Roberti, Special Assistant Attorney General, for Defendant.

## OPINION

BOURCIER, Justice.

This matter is before this Supreme Court pursuant to certification from the Superior Court of five questions of doubt and importance, allegedly pursuant to G.L.1956 § 9–24–27 and Rule 72(b) of the Superior Court Rules of Civil Procedure. For the reasons hereinafter set forth, we decline the certification and enter remand and other appropriate orders.

## I

### Case Travel—Facts

In May 1977 Bayview Towing, Inc. (Bayview), was issued a certificate of public convenience and necessity by the Division of Public Utilities and Carriers (the Division) enabling Bayview to carry on a general motor-vehicle-towing service between authorized points in the State of Rhode Island. Bayview stock ownership at that time was in Joseph Casinelli (Casinelli) and Daniel E. Driscoll (Driscoll) and their wives, but the business was operated by Casinelli and Driscoll. Bayview's business was both successful and well managed and enjoyed a good relationship with the Division and with the Public Utilities Commission.

In early 1991 Kenneth Rocha (Rocha), who was then engaged in the towing business in Rhode Island, learned that Bayview might be available for purchase. In August 1991 Rocha began negotiating with Driscoll for the purchase of Bayview. Those negotiations continued on for some months until early May 1992, when it then became apparent that Rocha and Driscoll had arrived at agreeable terms for the purchase and sale of Bayview. Unfortunately Rocha at that time was no longer engaged in the towing business in Rhode Island. His record of serving the public convenience had not been good, and the Division had deemed him unfit to continue providing common-carrier services to the public and, as a result, had on April 27, 1992 revoked his certificate of public convenience and necessity (operating license M.C. 1036). It was of course obvious to him that he would

have great difficulty in obtaining the Division's approval of any transfer to him of Bayview's stock from Driscoll and Casinelli and the transfer to him of Bayview's towing licenses, operating license M.C. 758 and ICC license No. 170728. In addition he was appealing the Division's revocation of his certificate of convenience, and Public Utilities Commission regulations prohibited joint control by a single person or entity of more than one licensed certified common carrier. G.L. 1956 § 39–12–20. Rocha's wife, Diane Rocha (Diane), suddenly emerged as his genie, providing the solution to his dilemma.

Diane, although living in East Providence with Rocha, went to the Providence Probate Court and, after there listing her address as "664 Plainfield Street, Providence," where she did not in fact reside, and after giving a date of birth different from that given later by her to the Division and the Secretary of State's office, petitioned that court to change her name from Diane E. Rocha to Diane E. Sutton. That petition was granted on June 2, 1992. So on June 2, 1992, Diane left East Providence as Mrs. Rocha and returned from Providence later that afternoon as Mrs. Sutton. One month later, on August 2 or 3, 1992, the purchase and sale agreement negotiated by Rocha and Driscoll for the Bayview towing business was executed and listed Diane E. Sutton (Sutton) as the purchaser. Shortly thereafter on September 24, 1992, Sutton notified the Division that she had agreed to purchase the stock of Bayview Towing, Inc., and that she and Driscoll would be the corporate officers and directors, implying thereby Driscoll's continued presence in the business. The Division did not suspect that Sutton was really Rocha's wife. Instead, relying on Driscoll's experience, good name, and record, and expecting that his continued presence in Bayview would provide operational responsibility, the Division elected to waive the public-hearing requirement usually employed in requests for stock transfers of licensed corporations. Accordingly, on October 2, 1992, the Division approved, without public hearing, the Bayview stock transfer from Driscoll and Casinelli to Sutton and the continued use of Bayview's certificate of convenience.

Two months later, on November 6, 1992, Sutton filed a notification of corporate name change with the office of the Secretary of State. Bayview Towing, Inc., had changed its name to Bayview Trucking, Inc. Sutton also filed her 1992 annual corporate report for Bayview Trucking, Inc. In that annual report she listed her address as 664 Plainfield Street, Providence, and listed herself as holder of all corporate and director offices. Driscoll had been eliminated from his previous corporate offices. That filing spawned a complaint to the Division by "one of the towing companies." The unnamed complainant informed the Division that Kenneth Rocha was in fact running Bayview and was doing so through his wife, Diane E. Sutton.

On November 20, 1992, the Division, after investigating Sutton, her address, and Driscoll's sudden exit from Bayview, notified both Sutton and Driscoll to appear for hearing on December 10, 1992, and to there show cause why Bayview's operating certificate should not be suspended or revoked. By agreement the hearing was continued to December 18, 1992, and began on that date. Testimony was presented at the hearing before the Division's deputy administrator Bruce Stevenson. Sutton and Driscoll were present, each represented by counsel. The hearing testimony quickly exposed the flimflam that had been perpetrated upon the Division and the obvious reasons therefor. When Sutton was called to testify, despite being the sole stockholder and officer in Bayview, which held the discretionary state licenses and certificate enabling Bayview to do business in Rhode Island, she, on advice of counsel, refused to answer any questions. She refused to say where she lived, what offices she held, whether her married name was Rocha, and so on. After being assured by Sutton's counsel that she would not answer any questions, unless first given complete transactional immunity, the hearing officer excused Sutton as a witness, and the hearing continued with the taking of testimony and evidence concerning Sutton. That evidence exposed her sham acts, who she was, and where she really lived, and the like.

At the conclusion of the hearing, on motion by the Division's counsel, the hearing officer

indicated to counsel for Sutton that he intended to grant the Division's motion to revoke Bayview's certificate of convenience. Sutton's counsel then requested the hearing officer to stay his decision so that he might seek a judicial stay thereof. The hearing officer, for some unexplained reason, informed counsel that he would not enter his decision "till the close of business on Monday to give you the opportunity to go to the Superior Court and do what you have to do." On January 12, 1993, despite the fact that the hearing officer had not then, and has not to this date, ever entered a final decision, counsel for Sutton filed an administrative appeal in the Superior Court pursuant to G.L.1956 § 42–35–15. The filing of that appeal, when examined, certainly presents a case of unusual first impression.

The complaint filed purports to be an administrative appeal from a final agency decision pursuant to § 42–35–15. No final agency decision, however, had *ever been made and entered.* The appeal alleges, improperly and without required specified detail, some fourteen different constitutional challenges in vague generality without specifying with any degree of explanation to what each challenge pertains. Finally, it contained a request to stay the agency's final decision that has never been entered.

The complaint, purporting to be an administrative appeal, was file marked in the clerk's office at 3:43 p.m. on January 12, 1993. Nine minutes later at 3:52 p.m., a Superior Court justice not only entered his order granting the stay of the nonexistent final agency decision but also provided in his stay order that his stay would remain in effect "pending certification of a question of law to be certified to the Supreme Court." The order then required Sutton's counsel to prepare and submit the "petition for certification" by January 26, 1993. It appears from the record that the Superior Court justice actually entered an order certifying to this Supreme Court questions of law that did not exist, that he never saw or read, and that never came into existence until July 15, 1994, some eighteen months after he had entered his certification order. That certification was in total disregard of Rule 72 of the Superior

Court Rules of Civil Procedure, and in total disregard of the many reported decisions of this Court. As a direct result of that stay, Bayview Trucking, Inc., has been permitted to conduct a towing business in this state for almost two and one-half years in total violation of clear agency rule and statutory requirements intended to protect the general public and for the public good.

## II

### Bayview–Sutton's Administrative Appeal

Section 42–35–15 permits judicial review of any final order *entered* by a state governmental board, commission, department, or officer, after hearing, in a contested case. Any party aggrieved by such order may file his or her complaint, seeking review of the administrative decision within thirty days after receiving notice of the final decision of the agency or, if a rehearing before the agency is requested, within thirty days after the decision thereon. § 42–35–15(b); *Considine v. Rhode Island Department of Transportation,* 564 A.2d 1343, 1344 (R.I. 1989); *Great American Nursing Centers, Inc. v. Norberg,* 439 A.2d 249, 253 (R.I.1981). The final orders from which an appeal may be taken are defined in § 42–35–12. In this case, there is no question that Bayview and Sutton's complaint was filed in the Superior Court within thirty days of the hearing officer's *intended* final decision and order. The real problem is that it was filed *before* any final decision or order was entered and, as the Superior Court file record discloses, has never to this day been entered. The Superior Court accordingly lacked subject matter jurisdiction to review a final agency decision that never existed.

## III

### Constitutional Challenges

Bayview–Sutton's complaint alleges in the most general fashion some fourteen violations of their constitutional rights. Their complaint simply states that the agency hearing officer, acting pursuant to § 42–35–15 violated their

"First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United

States Constitution and Article 1, sections 5, 6, 10, 13, 14 and 24, and Article VI, section 1 of the Rhode Island Constitution."

That manner of machine-gun assault upon statutory proceedings has long been criticized and held to be both improper and insufficient to warrant judicial consideration. *Creditors' Service Corp. v. Cummings,* 57 R.I. 291, 304–05, 190 A. 2, 10 (1937). A party raising constitutional challenges has the duty to set out in clear terms the specific nature of those challenges. *Town of Foster v. Lamphere,* 117 R.I. 541, 545, 368 A.2d 1238, 1240 (1977). *See also Mesolella v. City of Providence,* 508 A.2d 661, 669 (R.I.1986). He or she must state in clear and direct language which specific article, section and clause in the Federal or the State Constitution is alleged to have been violated. To simply state that, for example, the Fourteenth Amendment, as in this complaint, "without also specifying whether it is due process, privileges and immunities, or equal protection clause which is pertinent," is insufficient for certification. *Jerome v. Pratt,* 111 R.I. 56, 58, 298 A.2d 806, 808 (1973). The complaint in this case falls victim to the deficiencies above noted and leaves barren the complaint except for its request for a stay of the nonexistent final agency decision.

## IV

### The Certification

■ The proper method for certification of questions of law to this Supreme Court from the Superior Court is provided for in Rule 72 of the Superior Court Rules of Civil Procedure and G.L.1956 §§ 9–24–25 and 9–24–27. In this case § 9–24–25 is neither pertinent nor applicable. Our case law has dealt with and prescribed what is required of a hearing or trial justice before he or she can certify questions of doubt and importance to this Supreme Court. In 1912, just seven years after the adoption of the Court and Practice Act of 1905, this Supreme Court had first occasion to then interpret and to explicitly explain what was required of a trial or hearing justice when considering a motion to certify a question of doubt and importance. In *Tillinghast v. Johnson,* 34 R.I. 136, 139,

82 A. 788, 790 (1912), the court stated that certification required more than just simply being a question on which a justice was unwilling at the time to make an immediate ruling. The reported opinions of this Supreme Court have consistently and repeatedly mandated that a trial or hearing justice should not certify a question of law to this Court unless and until he or she first carefully considers the question or questions sought to be certified and then, after having had the benefit of counsels' research and informed arguments, believes that he or she is unable to resolve the question satisfactorily. *Employers Mutual Casualty Co. v. Martin,* 671 A.2d 798 (R.I.1996); *Richardson v. Bevilacqua,* 115 R.I. 49, 340 A.2d 118 (1975); *Jerome v. Pratt,* 111 R.I. 56, 298 A.2d 806 (1973); *State v. Flynn,* 100 R.I. 520, 217 A.2d 432 (1966); *Easton v. Fessenden,* 63 R.I. 11, 6 A.2d 714 (1939). Simply because a hearing or trial justice is reluctant to resolve a question, or that the parties want quick resolution of a question, does not justify or permit "short-circuiting of proper trial procedure" by a hearing or trial justice. *Richardson,* 115 R.I. at 53, 340 A.2d at 120. *See also State v. Walsh,* 108 R.I. 518, 277 A.2d 298 (1971).

■ In this case the hearing justice who granted the order for certification and then stayed all further agency and court proceedings pending determination of the certified questions erred. He had no final agency decision or order before him that he could act upon and stay. As to the certification order that he entered on January 12, 1993, he had at that time no proposed certified questions before him. In fact, no proposed questions were ever presented to him for certification until some eighteen months later, on July 15, 1994. It appears that the Superior Court justice in this proceeding overlooked this Supreme Court's many reported opinions regarding certification as well as Rule 72 and § 9–24–27. In any event, from the time that Bayview–Sutton's complaint was filed on January 12, 1993, at 3:43 p.m. until the time that the hearing justice signed the certification of nonexistent proposed questions of doubt and importance at 3:52 p.m. on January 12, 1993, a period of

nine minutes had elapsed. We are reasonably confident in concluding that he failed, in that short time, to extend to the matters before him the careful consideration of the certification process that was both expected and required. His actions constituted clear error.

### Conclusion—Order

In order to unravel the parties and the issues from the legal quagmire existing in the case record before us, we order the following:

1. The record and the papers in this case are remanded to the Division of Public Utilities and Carriers so that the administrator may enter his final order in this case revoking Bayview's Certificate of Convenience.

2. The plaintiffs below, Bayview and Sutton, after receiving the order to be entered by the Division's hearing officer, will then have thirty days within which to file their appeal therefrom, if they so desire, in the Superior Court.

3. Bayview-Sutton's pending Superior Court complaint, P.C. 93–0170, is dismissed in that it is a premature administrative appeal from a nonexisting agency order.

4. In the event that Bayview and/or Sutton do file an appeal from the final order to be entered by the Division's hearing officer, the Superior Court, or any justice thereof is hereby ordered to deny and not to grant any request made to stay the final order of the Division in the matter of *In re Hearing, Bayview Towing, Inc.*, Public Utilities Commission docket No. 92–MC–145.

FLANDERS, J., did not participate.